JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Robert A. Hukill, appeals from the judgment of the Common Pleas Court, rendered after a jury verdict, finding him guilty of aggravated burglary and assault. For the reasons that follow, we affirm.
 {¶ 2} The record reflects that the Cuyahoga County Grand Jury indicted Hukill on one count of aggravated burglary, in violation of R.C. 2911.11, and one count of felonious assault, in violation of R.C. 2903.11.
 {¶ 3} Joseph Cervenka, the 81-year-old victim, testified at trial that he lives alone. As he was lying in bed in the dark at approximately 10:15 p.m. on June 23, 2004, he heard a loud noise and then suddenly saw an intruder standing by his bed. The intruder demanded that Cervenka give him his money. Cervanka sat up and told the intruder, "I don't have none," but the intruder responded, "Old people have money and gold jewelry." When Cervanka again stated that he did not have any money, the intruder hit him in his left eye. He then took $25 from a pair of Cervanka's pants that were hanging over a chair in the bedroom and told Cervanka to follow him.
 {¶ 4} Cervanka followed the intruder as he went from room to room, ransacking Cervanka's house. The intruder took a VCR from the living room and two guns from a closet in the back bedroom. After the intruder left, Cervanka called a neighbor, who came over to help and then called 9-1-1 for Cervanka.
 {¶ 5} Cleveland police officer Frank Santell testified that he and his partner responded to Cervanka's home at approximately 11:55 p.m. Cervanka described the intruder as between 20 to 30 years of age and dark complected. Cervanka also told the officers that the intruder did not have a shirt on, but was wearing cut-off blue jean shorts, which hung low on his hips over dark boxer shorts. He also had several tattoos. When the neighbor overheard this description, she suggested that the intruder might have been Hukill, who lived in the neighborhood. Cervanka's description of the intruder was then radioed to other officers in the area.
 {¶ 6} During his investigation, Officer Santell noticed an open 40-ounce bottle of Genessee beer on the porch landing close to the door leading into Cervanka's kitchen. Upon questioning, Cervanka explained that he only drank Milwaukee's Best beer, did not buy 40-ounce bottles, and did not know who the bottle of Genessee beer belonged to.
 {¶ 7} Police officer Richard Mauer testified that a short time later, he stopped Hukill as he walked down a street in the vicinity of Cervanka's home. When he was stopped, Hukill was wearing a gray sweatshirt and gray sweatpants.
 {¶ 8} Santell and his partner then took Cervanka to identify the suspect. Cervanka testified that, "I told them it looked like him, but they made him take off the sweatshirt top. And then I said it looked like him. Then they made him drop his sweat pants down and saw the blue jeans and like hip huggers and the black boxer shorts. And I said that's him." Cervanka admitted that he had not gotten a good look at the intruder's face because it was dark in his bedroom, but he identified Hukill from the clothing he was wearing during the break-in. Asked if he saw his assailant in the courtroom, Cervanka responded, "It looks like him over there," referring to Hukill.
 {¶ 9} Detective Michael Gibbs testified that he lifted fingerprints off the 40-ounce bottle of Genessee beer found on Cervanka's porch entryway. Michelle Curtyze, a fingerprint expert, identified five fingerprints on the bottle as belonging to Hukill.
 {¶ 10} Hukill testified on his own behalf that he did not know Cervanka, had not broken into his home, and was not wearing cut-off blue jean shorts that day. Hukill admitted drinking from a 40-ounce bottle of Genessee beer earlier in the day, but testified that he had met several neighborhood friends on a street corner and left the bottle with them to share it. Hukill also showed his tattoos to the jury, including a large tattoo of a skeleton on his back, which Cervanka never mentioned.
 {¶ 11} Corrections officer Roscoe Nevels, who is employed at the Cuyahoga County Jail, also testified for the defense. Nevels testified that Hukill was not wearing cut-off blue jean shorts on June 28, 2004 when he was transferred to the Cuyahoga County Jail from Cleveland City Jail.
 {¶ 12} The trial judge denied Hukill's Crim.R. 29 motion for acquittal regarding count one, aggravated burglary. The judge granted the motion regarding count two, felonious assault, but amended the indictment and charged the jury on the lesser offense of assault. The jury found Hukill guilty of both counts and the trial court sentenced him to eight years incarceration, to be served consecutive to two years incarceration on a conviction for attempted robbery in Case No. CR-4505617, to which Hukill had earlier pled guilty. This appeal followed.
 SUFFICIENCY OF THE EVIDENCE {¶ 13} In his first assignment of error, Hukill contends that the trial court erred in denying his Crim.R. 29 motion for acquittal because the evidence was insufficient to support his convictions.
 {¶ 14} Crim.R. 29(A) provides for judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 15} Hukill was convicted of aggravated burglary and assault. R.C.2911.11, regarding aggravated burglary, provides that "no person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, [and] * * * the offender inflicts * * * physical harm on another * * *." R.C.2903.13, regarding assault, provides that "no person shall knowingly cause or attempt to cause physical harm to another * * *."
 {¶ 16} Hukill concedes that "it is undisputed that Mr. Cervanka was assaulted and his home was burgled," but asserts that the evidence was insufficient to support his conviction for these offenses because the State failed to establish that he was the burglar. Hukill contends that Cervanka's identification was insufficient because Cervanka admitted that he could not see his attacker's face in the dark, and based his identification only on Hukill's boxer shorts, not his face or his tattoos. Hukill further contends that Cervanka's in-court identification was equivocal, at best. Finally, Hukill argues that the mere fact that a beer bottle containing his fingerprints was found in Cervanka's home does not provide sufficient evidence that he was the attacker. We disagree.
 {¶ 17} The evidence at trial established that in the description of his attacker given to the police shortly after the incident, Cervanka described what Hukill was wearing and noted that he had tattoos on his upper body. When he was arrested a short time later, Hukill was wearing the clothes that Cervanka described. In addition, Cervanka unequivocally identified Hukill as his attacker. This evidence, if believed, was sufficient to establish that Hukill was the burglar.
 {¶ 18} Appellant's first assignment of error is therefore overruled.
 MANIFEST WEIGHT OF THE EVIDENCE {¶ 19} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v. Thompkins (1997), 78 Ohio St.3d 380, 390. When considering an appellant's claim that the conviction is against the weight of the evidence, the reviewing court sits, essentially, as a "`thirteenth juror' and [may] disagree with the factfinder's resolution of the conflicting testimony.'" Thompkins, supra at 387, quoting Tibbsv. Florida (1982), 457 U.S. 31, 42. The reviewing court must examine the entire record, weighing the evidence and considering the credibility of witnesses, while being mindful that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982), 70 Ohio St.2d 79, 80. The court may reverse the judgment of conviction if it appears that the factfinder, in resolving conflicts in the evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins,78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Martin, supra.
 {¶ 20} In his second assignment of error, Hukill argues, for the same reasons set forth in assignment of error one, that his convictions were against the manifest weight of the evidence. We disagree.
 {¶ 21} Although Hukill argues that the beer bottle is "not even circumstantial evidence" of his identity as the attacker, the fingerprints were not the only evidence demonstrating that Hukill was the burglar. Shortly after the assault, Cervanka unequivocally identified Hukill as his attacker based on what Hukill was wearing and the tattoos on his upper body. Although Cervanka may not have noticed the tattoo on Hukill's back, he testified that he did notice the prominent 11-inch tattoo on Hukill's left shoulder. In addition, although Hukill disputes Cervanka's testimony that he was wearing cut-off blue jean shorts on the day of the attack, both Officers Santell and Mauer testified that Hukill was wearing cut-off blue jeans and boxer shorts under his sweatpants when he was arrested, corroborating Cervanka's testimony.
 {¶ 22} The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230. After reviewing the entire record, weighing the evidence and considering the credibility of the witnesses, we are not persuaded that the jury lost its way and created such a miscarriage of justice that Hukill's convictions must be reversed.
 {¶ 23} Appellant's second assignment of error is overruled.
 a. CONSECUTIVE SENTENCES {¶ 24} In his third assignment of error, Hukill contends that the trial court erred in sentencing him to consecutive sentences.
 {¶ 25} R.C. 2929.14(E)(4), which governs the imposition of consecutive sentences, provides that a court may impose consecutive sentences only when it concludes that the sentence is 1) necessary to protect the public from future crime or to punish the offender; 2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and 3) one of the following applies: a) the offender committed the offenses while awaiting trial or sentencing, under sanction or under post-release control; b) the harm caused by the multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of the offense; or c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime.
 {¶ 26} In addition to the three findings required by R.C. 2929.14(E)(4), R.C. 2929.19(B)(2) requires that the trial court give its reasons for imposing consecutive sentences. Failure of a trial court to do so constitutes reversible error. State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, at ¶ 23.
 {¶ 27} The record reflects that in sentencing Hukill, the trial court made the specific findings required by R.C. 2929.14(E)(4). As reasons for these findings, the court noted that Hukill, who began smoking marijuana and drinking alcohol at age 15, assaulted an 81-year-old man who lived alone because he assumed he "was an easy mark." The court also noted that with respect to the attempted robbery conviction in Case No. CR-405617, Hukill hit the victim on the shoulder with a bottle of wine so hard that the bottle broke. The trial court also found that Hukill had an extensive criminal background, starting in his youth, and was a "likely recidivist [who] certainly has not responded well to past attempts at rehabilitation."
 {¶ 28} On this record, we hold that the trial court made the necessary statutory findings and sufficiently gave its reasons for those findings to impose consecutive sentences.
 {¶ 29} Appellant's third assignment of error is overruled.
 MORE THAN THE MINIMUM SENTENCE {¶ 30} In his fourth assignment of error, Hukill argues that the trial court erred by imposing more than the minimum allowable sentence.
 {¶ 31} Hukill first argues that the trial court did not make the requisite findings to support imposing more than the minimum sentence.
 {¶ 32} R.C. 2929.14(B) provides that if an offender has not served a previous prison term, the trial court must impose the minimum sentence unless it finds on the record that a minimum sentence would "demean the seriousness of the offender's conduct" or "not adequately protect the public from future crime by the offender others." In State v. Edmonson
(1999), 86 Ohio St.3d 324, the Ohio Supreme Court construed R.C. 2929.14(B) to mean that "unless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence." Here, the trial court specifically found that "the shortest prison term would demean the seriousness of the defendant's conduct and not adequately protect the public from the defendant." Pursuant to Edmonson, the trial court is not required to give the reasons for its finding under R.C. 2929.14(B). Accordingly, we conclude that the trial court complied with R.C. 2929.14(B) in sentencing Hukill to more than the minimum sentence.
 {¶ 33} Hukill also argues that his nonminimum sentence violates the decision of the United States Supreme Court in Blakely v. Washington
(2004), ___ U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403. This argument was addressed in this court's en banc decision of State v. Atkins-Boozer,
Cuyahoga App. No. 84151, 2005-Ohio-2666. In Atkins-Boozer, we held that R.C. 2929.14(B), which governs the imposition of nonminimum sentences, does not implicate the Sixth Amendment as construed in Blakely.
Accordingly, in conformity with that opinion, we reject Hukill's contentions and overrule his fourth assignment of error.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and Calabrese, Jr., J., Concur.